**Rosie E. WAKEFIELD, Plaintiff,**

v.

**MONSANTO COMPANY, Defendant.**

No. 87–0478C(6).

United States District Court,
E.D. Missouri, E.D.

June 19, 1991.

See also 120 F.R.D. 112.

Louis Gilden, Norah J. Ryan, Charles Oldham, Julius L. Chambers, Ronald Ellis and Charlotte Rutherford, St. Louis, Mo., for plaintiff.

Thomas M. Hanna and Thomas O. McCarthy, McMahon, Berger, Hanna, Lini-

han, Cody & McCarthy, St. Louis, Mo., for defendant.

## MEMORANDUM OPINION

GUNN, District Judge.

This matter is before the Court for a decision on the merits after a non-jury trial. The parties have filed proposed findings of fact and conclusions of law. Based on the evidence and testimony presented at trial and the post-trial memoranda submitted, the Court now adopts this memorandum opinion as its findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52.

## FINDINGS OF FACT

Plaintiff is a black female who has been employed continuously at defendant company since October 1967. Plaintiff was initially placed in the Enviro–Chem Department at a grade level of 5, which is equivalent to the current grade level of 24. At some point thereafter plaintiff was promoted to a grade 6 position, equivalent to the current grade 25. In 1981 plaintiff transferred to the Agricultural Company in the position of Distribution Clerk II. This position was a grade 24 position, but plaintiff's salary remained at the grade 25 level for two years under defendant's salary protection policy. Even when plaintiff's salary eventually was administered at a grade 24 level, she continued to receive annual raises and never received a pay cut because of the overlap in salary ranges for grades 24 and 25. While in this position, she consistently received performance ratings of good to very good from her supervisors.

In June of 1985, defendant began a reorganization plan. Each company manager was directed to analyze his or her operations in order to reduce organization by combining and eliminating jobs. Pursuant to this plan, the position occupied by plaintiff was reevaluated and restructured. Additional duties were added to the job, while others were dropped. The position was renamed "Materials Clerk" and was reevaluated as a grade 25 position. Of the four positions in plaintiff's department, only one (plaintiff's) was reevaluated at a higher grade level. Plaintiff was the only black employee in that department.

Pursuant to the guidelines established by a task force which was in charge of the reorganization, any jobs which were changed by 50 percent or more were determined to be "substantially changed." The employees currently in such positions were dubbed "surplus" and were placed in a pool. The guidelines provided that no layoffs or promotions would result from this reorganization and that "surplus" employees were to be placed in jobs equal to their grade level, or not more than one or two grades below their grade level.

In December 1985, the personnel representatives from each of the company units met in order to place the surplus employees in positions within the defendant company. Each personnel representative brought a list of the surplus employees, mini personnel files of each, a list of new positions to be filled in the reorganization and job evaluations describing the new positions. Approximately two hundred employees were placed in positions during this meeting.

The newly structured position of "Materials Clerk" was assigned to a grade 25 surplus employee named Sandra Miller, a white female. Miller formerly worked as a secretary at the World Headquarters unit of the company. Plaintiff was placed in an accounting support clerk position, which subsequently was discovered to be non-existent. Therefore, a position in the Export Division was found for her, but she failed to qualify for such due to her typing deficiencies. Two white "surplus" employees were replaced in their original jobs during this process. Although their jobs changed by more than 50 percent, the grades assigned to those positions did not change. Therefore, these grade 25 employees were re-placed into grade 25 positions.

When plaintiff returned to work from vacation in January 1986, she was informed that she had been replaced by Miller. At this time, a replacement position for plaintiff had not been located. Plaintiff spent one to two weeks sharing a desk with Miller and training her in several aspects of the position. During this time, plaintiff

also spent some time in the ladies' restroom/lounge, asserting that she had no other place to go. However, she was never assigned to that area.

At that point, rather than be placed in a pool of about sixty surplus, "non-placed" employees who were assigned short-term jobs during the interim, plaintiff was placed in the travel accounting section of the agriculture company in a position formerly occupied by a temporary employee. Plaintiff's duties included those usually associated with a temporary employee, and she became disillusioned with what she considered to be "menial work."

In June 1987, a new position of Warehouse Accounting Clerk was created to handle some of the duties formerly handled by plaintiff as a distribution clerk. Plaintiff bid on this position, graded at 25, and was awarded the job. She thus received a promotion to a grade 25.

During the time period of January 1, 1986 to June 1987, plaintiff's actual salary exceeded that of Tina Miller's, and she lost no wages or benefits during that time.

Plaintiff claims that during the above time period in which she was displaced from her job, defendant discriminated against her on the basis of her race in violation of Title VII, 42 U.S.C. § 2000e et seq. At trial, plaintiff stated that her claim does not concern issues of promotion or wages increases, or retaliation, but rather, is confined to a concern over future job security. Plaintiff seeks this Court to prevent defendant from displacing her in the future.

### CONCLUSIONS OF LAW

Plaintiff is a black female, and defendant is an employer within the meaning of Title VII. Plaintiff has complied with all the statutory prerequisites to bringing suit under Title VII. 42 U.S.C. § 2000e–5(f).

In *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1980), the United States Supreme Court set forth the following basic allegations of burden of proof and order of presentation of proof in a case alleging intentional employment discrimination under Title VII:

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for [his action] ..." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination....

The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff....

In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), the court held that to establish a prima facie case of racial discrimination, the plaintiff must show:

(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

In this case, plaintiff established that she is a member of a racial minority who was qualified for at least part of the revamped position and who was replaced by a white employee. Defendant then established a legitimate, nondiscriminatory reason for its action, that pursuant to the policies of the reorganization, no promotions or layoffs were to result and positions were to be filled by employees in grades matching that of the positions.

Plaintiff has not established that defendant's proffered reasons are not the true reasons for its actions. There is no evidence that race entered into the original decision to restructure plaintiff's position.

There is absolutely no evidence that plaintiff was prevented from being re-placed into that position by virtue of her race. Rather, the reason she was not awarded the restructured position was because she was a grade 24 employee and the new position was a grade 25. Plaintiff offered no evidence that a black grade 25 employee was denied access to that position in favor of Miller, a white grade 25 employee. In addition, there is no evidence of a racial motivation behind the fact that plaintiff was assigned a job with "menial" tasks for a year and a half until a permanent position became available.

The Court finds no credible evidence that in January 1986 plaintiff was told to stay in the ladies' restroom/lounge until a position became available. Although plaintiff's situation during that time certainly was not the most ideal, plaintiff presented no evidence that defendant's actions were motivated by racial discrimination.

Plaintiff has not met her burden of establishing unlawful discrimination by the defendant. Her stated concern, rather than being one tied to discrimination, focuses on future job security and some action that this Court should take to assure that there be no future job displacement. Plaintiff suggests no formula for the Court to follow to provide the job security she seeks. Indeed, the vicissitudes of business operation preclude such a venture in this instance. Certainly, plaintiff has remedies available to protect her from unlawful discriminatory action by her employer. But plaintiff has not fallen victim in this case to unlawful discrimination. The job security she seeks is not within the purview of the antidiscrimination statutes she seeks to invoke.